Robert A. Naeve (State Bar No. 106095)
rnaeve@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA  92612.4408
Telephone:  +1.949.851.3939
Facsimile:   +1.949.553.7539

Nathaniel P. Garrett (State Bar No. 248211)
ngarrett@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:  +1.415.626.3939
Facsimile:   +1.415.875.5700

Attorneys for Defendants
HON. DAVID S. WESLEY and JOHN A.
CLARKE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BRENDA MILES, et al., | Case No. CV13-01817 TJH (RZx) |
| Plaintiffs, | Assigned for all purposes to Honorable Terry J. Hatter, Jr. |
| v. | **DEFENDANTS' SUPPLEMENTAL BRIEF RE ABSTENTION** |
| HON. DAVID S. WESLEY, et al., | |
| Defendants. | |

1  I.    **INTRODUCTION**

2          Hemmed in by massive and unprecedented budgetary constraints, officials at

3  the Los Angeles Superior Court ("LASC") have spent months designing a plan that

4  will both satisfy the Court's budget and maximize access to justice for all litigants.

5  Among the many inter-related modifications that LASC intends to adopt before the

6  beginning of the Court's fiscal year on July 1, 2013, is a plan to consolidate

7  unlawful detainer ("UD") actions in five courts located across Los Angeles County.

8          Plaintiffs seek an injunction that effectively would scrap LASC's entire

9  Consolidation Plan, and subject LASC to this Court's ongoing review until and

10  unless the Court approves of LASC's intended actions.  The Supreme Court and

11  Ninth Circuit have made clear that the case for equitable abstention is at its apex

12  when, as here, the plaintiff seeks injunctive relief that would result in heavy

13  interference with the administration of a state's judicial system.

14          Plaintiffs contend that abstention is inappropriate because they have not

15  expressly asked the Court to directly interfere with any particular state court

16  unlawful detainer action.  What Plaintiffs fail to appreciate is that in order to grant

17  the relief they seek, this Court would necessarily have to examine the

18  administration of a substantial number of UD cases in order to determine that a

19  violation warranting equitable relief exists.  Should the Court find that equitable

20  relief is appropriate, such a finding would call into doubt the merits of numerous

21  UD actions, and inevitably set up the basis for future federal lawsuits of the kind

22  *O'Shea* condemns.  There simply is no material distinction between this case, and

23  the kind of cases where the Ninth Circuit has found abstention appropriate.

24  II.   **ARGUMENT**

25          Plaintiffs argue that the doctrine of equitable abstention set forth in *O'Shea v.*

26  *Littleton*, 414 U.S. 488 (1974), and as applied by the Ninth Circuit in *E.T. v. Cantil-*

27  *Sakauye*, 682 F.3d 1121 (9th Cir. 2012), is inapposite here because their request for

28  injunctive relief would not result in the kind of interference that the doctrine

1  condemns.  Plaintiffs' argument is based on a misreading of *E.T.* and a

2  mischaracterization of the effect the injunctive relief they request would have on

3  the California judicial system.

4  In *O'Shea*, the Supreme Court held that equitable considerations, including

5  the adequacy of other remedies and the need for proper balance between federal and

6  state court operations, counsel federal courts to refrain from engaging in what can

7  amount to "an ongoing federal audit of state … proceedings which would indirectly

8  accomplish the kind of interference that *Younger* … and related cases sought to

9  prevent."  *O'Shea*, 414 U.S. at 500.  The primary considerations for application of

10  this doctrine are:  (1) "the availability of other avenues of relief open to [the

11  plaintiffs] for the serious conduct they assert"; and (2) how "abrasive and

12  unmanageable" the "injunctive relief they seek" would be.  *Id.* at 504.

13    **A.    THE INJUNCTIVE RELIEF PLAINTIFFS SEEK IS ABRASIVE**

14         **AND UNMANAGEABLE.**

15  Plaintiffs primarily challenge the second prong of *O'Shea* abstention, arguing

16  that abstention is improper because the injunctive relief they seek would not

17  "involve examination of the administration of a substantial number of individual

18  cases."  ECF No. 21 at 3 (quoting *E.T.*, 682 F.3d at 1124.)  At the threshold,

19  Plaintiffs' argument is misguided because *E.T.* never held that equitable abstention

20  is limited to those situations where an "individual trial, judge, or courtroom event is

21  implicated by the relief sought."  ECF No. 21 at 2.

22  Rather, the issue, for purposes of equitable abstention, is whether the remedy

23  sought in a federal lawsuit amounts to "interference in such sensitive state activities

24  as administration of the judicial system" and "would inevitably set up the precise

25  basis for future intervention condemned in *O'Shea*."  *E.T.*, 682 F.3d at 1124, 1125

26  (internal quotation marks, citations, and emphasis omitted).  Thus, numerous courts

27  have invoked equitable abstention when the plaintiff sought equitable relief that

28  would result in substantial interference with state judicial activities, and subject

1   such activities to the ongoing supervision of federal courts.  *See, e.g.*, *Rizzo v.*

2   *Goode*, 423 U.S. 362, 369-70 (1976) (holding that district court should have

3   abstained from issuing injunction requiring city police department to draft for

4   court's approval a program for dealing with civilian complaints, pursuant to court-

5   mandated "guidelines"); *Kaufman v. Kaye*, 466 F.3d 83, 86-87 (2d Cir. 2006)

6   (*O'Shea* abstention proper where plaintiff sought declaratory judgment that

7   appellate case assignment procedures violated due process and equal protection);

8   *Luckey v. Miller*, 976 F.2d  673, 677-79 (11th Cir. 1992) (federal order revamping

9   state's indigent defense system would inevitably interfere with state criminal

10   proceedings).

11        In any event, notwithstanding the fact that Plaintiffs maintain a facial

12   challenge of LASC's Consolidation Plan, the injunctive relief they seek *necessarily*

13   would result in precisely the kind of interference with individual unlawful detainer

14   cases that *E.T.* does not permit.  In their Complaint, Plaintiffs allege that the

15   LASC's Consolidation Plan violates not only the ADA, but also the Rehabilitation

16   Act, the Fair Housing Act, and the Due Process and Free Speech clauses of the

17   United States Constitution.  And in their Prayer for Relief, Plaintiffs request not

18   only an order enjoining LASC from consolidating its unlawful detainer actions into

19   five courtrooms, but an order enjoining LASC from taking any future consolidation

20   actions until it conducts a public hearing and public input process, and establishes a

21   consolidation plan that "satisfie[s]" the Court that no unlawful practices exist.

22        Just as in *E.T.*, however, this Court cannot possibly award Plaintiffs the

23   injunctive relief they request unless and until it examines "the administration of a

24   substantial number of individual cases."  *E.T.*, 682 F.3d at 1124.  The untested and

25   untenable premise of Plaintiffs' Complaint is that every disabled litigant in a UD

26   action will be harmed by LASC's Consolidation Plan.  Even under Plaintiffs' own

27   theory of liability, however, certain disabled individuals, such as those who live

28   near a hub courthouse or who have access to transportation, will not suffer any

1    injury.  In order for this Court to grant relief, however, it must find that there exist a

2    sufficient number of actual violations to warrant relief.  That will, *necessarily*,

3    require the Court to make an inquiry into, as Plaintiffs put it, individual trials and

4    courtrooms.

5         For example, for Plaintiffs to prevail on their ADA claim for reasonable

6    accommodation, this Court must first examine the situation faced by (a) particular

7    litigant(s)—including his disability, the distance he lives from court, his public

8    transit options, and any accommodation made by the LASC (pursuant to Rule of

9    Court 1.100 or otherwise)—to determine that a violation of Title II has occurred

10   and to shape the appropriate relief.  Likewise, for Plaintiffs to prevail on their ADA

11   claim for disparate impact, this Court must first analyze a substantial number of

12   individual cases to determine whether, in fact, disabled litigants and their non-

13   disabled peers have been or would be detrimentally affected by the Court's

14   Consolidation Plan.  It is of no moment that the Court's inquiry might focus on

15   future hypothetical cases, rather than cases that have already occurred; *O'Shea*'s

16   significance stems in no small part from its holding that the equitable abstention

17   doctrine extends to injunctions aimed at controlling or preventing the occurrence of

18   specific events "that *might* take place in the court of *future* state … trials."  *O'Shea*,

19   414 U.S. at 500 (emphasis added).

20        The Ninth Circuit's opinion in *E.T.* is right on point.  In *E.T.*, the plaintiffs

21   asserted a facial challenge to the allegedly excessive caseloads of the Sacramento

22   County Dependency Court.  682 F.3d at 1122.  The plaintiffs did not explicitly

23   challenge the lawfulness of any one particular proceeding.  Nonetheless, the Ninth

24   Circuit recognized that in order to find attorney caseloads unconstitutional, the

25   district court would first have to decide how many cases are permissible as a

26   general proposition, and then determine, in potential future actions, whether

27   Defendants were adequately complying with the district court's finding of

28   unlawfulness.  *Id.* at 1124-25.

1      Just so here, to determine that LASC's Consolidation Plan is unlawful, the

2   Court first would have to decide how many courthouses, and in what locations, are

3   sufficient to satisfy LASC's statutory and constitutional obligations.  Then,

4   pursuant to Plaintiffs' own request for the Court to retain jurisdiction over the

5   matter until it decides that unlawful practices no longer exist, Plaintiffs' requested

6   injunction would "lay[] the groundwork for a future request for more detailed relief

7   which would violate the comity principles expressed in *Younger* and *O'Shea*."

8   *E.T.*, 682 F.3d at 1125.  Plaintiffs' requested relief would thrust the Court into the

9   unmanageable position of determining whether particular LASC judges and

10   officials have adequately protected the rights of some disabled litigants, a position

11   the equitable abstention doctrine abhors.  *See, e.g.*, *Pompey v. Broward Cnty.*, 95

12   F.3d 1543, 1550 (11th Cir. 1996) ("If a state judge does not obey a district judge's

13   injunction, are we willing to jail the state judge for contempt?"); *Hoover v. Wagner*,

14   47 F.3d 845, 851 (7th Cir. 1995) ("[W]ould that put the prosecutor, the judge, and,

15   if there were a jury, the jury in contempt of the federal injunction?"); *Ballard v.*

16   *Wilson*, 856 F.2d 1568, 1570 (5th Cir. 1988) (noting "a federal court ruling on the

17   practices and procedures of the municipal court system . . . would require

18   supervisory enforcement of the ruling by the federal courts" and "[t]his type of

19   monitoring of state court procedures . . . offends principles of federalism");

20   *McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 488 (11th Cir. 1996) (denying

21   injunction that "would thrust the federal court into an unseemly, repetitive,

22   quasisystematic, supervisory role over administration of the state court injunction");

23   *31 Foster Children v. Bush*, 329 F.3d 1255, 1279 n.11 (11th Cir. 2003) (noting "a

24   case cannot be decided in a vacuum," and "potential enforcement difficulties" must

25   be considered when deciding to abstain).

26      The intrusive scope and nature of Plaintiffs' requested relief sets this case

27   apart from *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992), upon

28   which Plaintiffs rely.  Noting that the facts were undisputed and that the parties

litigated the case on the basis of statistics detailing the "average times to resolution in civil cases," the Ninth Circuit concluded, "although not without some trepidation," that it could exercise declaratory jurisdiction to deny the plaintiff's claims. *Eu*, 979 F.2d at 704.  The complaint in *Eu* required the federal court only to evaluate *how long* a state court could take to decide a civil case; the federal court was *not* required to evaluate the *substance* or the *outcome* in any particular case; nor could its ruling have affected the outcome of those cases for this reason.

By contrast, Plaintiffs argue that LASC's Consolidation Plan is unlawful precisely because it will impact the outcome of unlawful detainer actions defended by some disabled litigants.  Indeed, to prevail on their due process claim, as but one example, Plaintiffs will have to show not only that LASC's Consolidation Plan discriminates against disabled litigants, but that such discrimination prejudiced the outcome of Plaintiffs' UD cases.  *See, e.g.*, *Ramirez-Alejandre v. Ashcroft*, 320 F.3d 858, 875 (9th Cir. 2003) (en banc) (establishing a due process violation always requires a showing of prejudice).  Thus, Plaintiffs Complaint calls for an intrusion into state court adjudications of a nature entirely unexpected in *Eu*.

For similar reasons, Plaintiffs' reliance on *Family Division of Trial Lawyers of Superior Court-D.C., Inc. v. Moultrie*, 725 F.2d 695, 703-04 (D.C. Cir. 1984), is misplaced.  In *Moultrie*, court-appointed dependency attorneys claimed that forced assignment to defend dependent litigants without pay amounted to involuntary servitude.  *Id.* at 697.  However, the attorneys claimed only that they should be paid for their work; they did not claim that they had provided ineffective assistance to their juvenile clients, or that their clients suffered prejudice in any way.  *Id.* at 703.  Under these circumstances, the District of Columbia Circuit properly found that it could adjudicate the attorneys' claims without evaluating or intruding into any state-court proceedings, and that there was "no potential for duplicative litigation, nor for irreverence toward the local courts, and no necessity that the relief need interfere with the day-to-day operations of the superior court."  *Id.* at 704.

1    The same cannot be said here.  Plaintiffs' requested injunction, which would

2    compel LASC to substantially reorganize its internal structure, require this Court to

3    consider the legality of LASC's reorganization plan, and subject the LASC and its

4    judges and officers to future litigation in federal court, certainly would interfere

5    with LASC's day-to-day operations and represent a manifest intrusion in a sensitive

6    state activity.

7    **B.    OTHER AVENUES FOR RELIEF ARE AVAILABLE.**

8    Plaintiffs also challenge the other prong of *O'Shea* abstention, arguing that

9    disabled litigants impacted by the Consolidation Plan have no other adequate

10   avenue for relief because, notwithstanding the existence of a California Rule of

11   Court designed to accommodate disabled litigants, "the procedures are wholly

12   inadequate and unknown to the thousands of tenants with disabilities who will be

13   subjected to unlawful detainer lawsuits."  (ECF No. 21 at 7.)

14   The gist of Plaintiffs' argument, and of an additional declaration that

15   Plaintiffs submit in support of their TRO application (ECF No. 22), is that unlawful

16   detainer litigants are unfamiliar with the LASC's established method for

17   accommodating disabled litigants through Rule 1.100.  Essentially, Plaintiffs argue

18   that unfamiliarity with the law is a sufficient justification for the exceptional

19   equitable relief they seek.

20   Yet Plaintiffs cannot argue that Rule 1.100 presents an inadequate avenue for

21   relief when they have not yet even tried to invoke it.  California Rules of Court

22   have "the force of positive law" and must be followed.  *Murphy v. Krumm*, 21

23   Cal.2d 846, 849 (1943).  Rule 1.100 thus provides Plaintiffs with a remedy with

24   real teeth.  The United States Supreme Court has cautioned that "when a litigant has

25   not attempted to present his federal claims in related state court proceedings, a

26   federal court should assume that state procedures will afford an adequate remedy, in

27   the absence of unambiguous authority to the contrary."  *Pennzoil v. Texaco*, 481

28   U.S. 1, 15 (1987).  Plaintiffs therefore cannot, on the basis of mere argument, call

- 7 -

into doubt the adequacy of the process provided by Rule 1.100.[1]

It may be that Plaintiffs' believe disabled UD litigants are not sufficiently aware of Rule 1.100. If so, Plaintiffs' declarant—who states that she counsels indigent litigants—and others like her who counsel indigent UD litigants can begin notifying litigants of their accommodation and transfer rights, and can file suit in state court to enforce them, should the need arise. Plaintiffs' beliefs, however, do not in themselves justify an unnecessary intrusion into sensitive state activities.

### C. *TENNESSEE V. LANE* DOES NOT SPEAK TO THE ISSUE OF ABSTENTION.

Plaintiffs argue that the Supreme Court's opinion in *Tennessee v. Lane*, 541 U.S. 509 (2004), somehow counsels against abstention. The Court's opinion in *Lane* dealt with the narrow issue of whether Congress validly abrogated state sovereign immunity when it enacted Title II of the ADA. Nothing in the Court's opinion suggests that equitable abstention doctrines carry less force in the context of Title II claims.

Indeed, it is difficult to understand why plaintiffs asserting claims under Title II of the ADA are entitled to injunctions that intrude on sensitive state actions more than plaintiffs who assert claims under the First Amendment, yet numerous courts have held that *O'Shea* abstention is appropriate in that circumstance. A finding of abstention is not a statement about the importance or significance of the statute or constitutional provision upon which the plaintiffs predicates its request for relief. Rather, it is a recognition, built upon comity and respect for the state, that federal courts, which "subsist[] side by side with 50 state judicial, legislative, and executive branches," must give appropriate consideration "to principles of

---

[1] In her additional declaration, Roberta Stovitz declares her understanding that the form for requesting a reasonable accommodation must be made in person, which would "defeat[] the whole purpose of providing a reasonable accommodation." (ECF No. 22 ¶ 12.) But as Judge Carolyn B. Kuhl made clear in her declaration, Ms. Stovitz's understanding is wrong. (*See* ECF No. 20 ¶ 27 (indigent litigants may file pleadings by fax for free).)

federalism in determining the availability and scope of equitable relief." *Rizzo*, 423 U.S. at 379. The constitutional issues presented in cases like *E.T.* were not insignificant. Nonetheless, the federal courts have recognized that even in cases involving important federal concerns, it is appropriate to respect "the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *O'Shea*, 414 U.S. at 500-01.

Contrary to Plaintiffs' assertion, a finding of abstention here will not close the federal courthouse doors to ADA litigants. A finding, like the one considered in *Lane*, that a particular state institution is physically inaccessible to individuals with disabilities does not result in an abrasive intrusion in sensitive state activities. An injunction requiring a particular courthouse to come up to code does not approach the level of intrusion and disruption effected by a broad injunction enjoining LASC from arranging its internal structures in order to meet a rigid and inalterable budget. Federal courts indisputably play a critical role in ensuring that state-owned and operated buildings meet ADA building codes. There are far more significant comity concerns at issue when, as here, Plaintiffs seek an injunction from a federal court that essentially would dictate how a state judicial system may organize itself.

### D. ABSTENTION IS APPROPRIATE UNDER THE CIRCUMSTANCES.

Finally, Plaintiffs argue that in light of the important issues presented by their Complaint, the Court should decline to abstain. As LASC has stated in the past, the Court is attuned to Plaintiffs' concerns with the Consolidation Plan and appreciates that all litigants, disabled or otherwise, will face additional burdens as a result of decreasing state court budgets. It does not follow, however, that this Court should award an injunction that will effectively preclude LASC from meeting its budget constraints unless LASC imposes even greater burdens on litigants in other types of litigation, including domestic violence, guardianship, conservatorship, and juvenile offenses.

1   As explained in LASC's opposition to Plaintiffs' TRO application, the Court
2   *must* find a way to achieve $85 million in cost reductions before July 1, 2013.  If
3   this Court enjoins LASC from consolidating its unlawful detainer cases, the entire
4   Consolidation Plan, which LASC officials have carefully and thoughtfully crafted
5   over many months, threatens to unravel.  An injunction here of the kind Plaintiffs
6   seek would prioritize the interests of unlawful detainer litigants over the interests of
7   all other litigants who rely on LASC for justice.  The fallout would descend directly
8   onto them.

9   Cases involving equitable abstention, including *O'Shea* and *E.T.*, often
10   involve important issues.  Nonetheless, well-established principles of comity call
11   for restraint, especially where another avenue of relief remains available to the
12   plaintiffs.  Here, LASC stands ready and willing to accommodate disabled UD
13   litigants, on a case-by-case basis, through the established procedures of Rule 1.100.
14   Under the circumstances, the Court should abstain under *O'Shea*, and give those
15   state-court procedures the chance to work as intended.

16   **III.   <u>CONCLUSION</u>**

17   For the foregoing reasons, Plaintiffs' application for a temporary restraining
18   order should be denied and the Complaint should be dismissed without prejudice.

19   Dated:        March 18, 2013               JONES DAY
20
21                                             By: s/ Robert A. Naeve
22                                                 Robert A. Naeve
23                                             Attorneys for Defendants
                                               HON. DAVID S. WESLEY AND
24                                             JOHN A. CLARKE
25
26
27
28